## STATE v. TEACHERS ANNUITY LIFE INS. CO. et al.

### No. 3773.

Court of Civil Appeals of Texas. Beaumont.

Feb. 6, 1941.

Rehearing Denied March 5, 1941.

Gerald C. Mann, Atty. Gen., and Wm. J. Fanning, Lloyd Armstrong, and Ocie Speer, Asst. Attys. Gen., for appellant.

Spears, Conger, Baskin & Spears, J. Franklin Spears, and J. B. Lewright, all of San Antonio, for appellees.

COMBS, Justice.

This suit involves the question of the right of the Attorney General of the State of Texas without the authority or the consent of the Board of Insurance Commissioners to institute and maintain a suit to declare void and to cancel the corporate charter of an insurance company organized under the statutes of this state.

The suit was instituted by the Attorney General in the name of the State of Texas in the District Court of Travis County in the nature of a quo warranto against individual defendants, C. M. Hargrove, C. H. Cavness, Dr. Floyd McCullar, Dr. W. A. King, Adrian Spears, Carroll J. Hester, A. J. Ritter, Jr., and Dr. M. J. Smith, purporting to act as officers, directors and stockholders of Teachers Annuity Life Insurance Company, and, in the alternative, against the Teachers Annuity Life Insurance Company, a corporation.

The first count of the petition charged that the alleged charter under which the defendant, Teachers Annuity Life Insurance Company, purports to act is wholly void for the reason that its capital upon which the charter was secured did not consist of property permitted by the statute as payment for capital stock, such as money, bonds, bank stock, or obligations secured by first mortgages upon unencumbered real estate in this state, but on the contrary the capital stock of $100,000 was purportedly paid for by transferring to the corporation an equity in a lot and building in the City of San Antonio. In that connection it was alleged in substance that said property was acquired by the incorporators for a consideration of $123,000 secured by an installment note in the sum secured by vendor's lien on the property; that the capital stock was paid for entirely by transfer of said property to the purported corporation at a valuation of $275,-000, the corporation assuming payment of the $123,000 indebtedness against it, and that "by reason of the character of the property with which the capital stock was purportedly purchased and paid for * * the charter of said company is void"; that the capital stock was made up of 10,000 shares of the par value of $10 each; that C. M. Hargrove, one of the defendants, as owner or as trustee for a number of

persons, has acquired a large amount of said stock which he is selling or offering for sale to various individuals and the public generally; that by reason of the fact that said stock is "fictitious and void" irreparable injury will result to purchasers of it. It was alleged that the application for charter showed on its face the manner of payment of the capital stock by transfer of the equity in the encumbered property, and that said application was approved by the then Attorney General of Texas at the time the purported charter was granted.

In the alternative it was alleged that, if the charter was not void, it was in any case voidable and should be forfeited. In that connection it was charged that the defendant, Teachers Annuity Life Insurance Company, is wholly insolvent; that no part of the $123,000 indebtedness which it, purported to assume against the property has been paid; that taxes in the sum of $3,000 have accrued against said property which indebtedness together with accrued interest on the original debt make the total indebtedness due against said property $132,000; that the cash market value of said property is only $55,000, leaving a net deficit of $77,-000, and hence there is no equity in the property; that the capital structure of the defendant company is impaired to the extent of 100% of the purported value of its stock with an excess net deficit of $77,000; that said company has no property or assets except the purported equity in the property in question and is wholly insolvent.

Upon the grounds alleged, the Attorney General sought judgment declaring the charter of the defendant insurance company void or forfeiting it, and for an injunction restraining the individual defendants and the purported agents of the insurance company from conducting the business of life insurance and from transferring or encumbering the assets of the company and for a receivership to wind up its affairs, etc.

The appellees, who will hereinafter be referred to as defendants, challenged the right of the Attorney General to maintain the suit by filing a motion as provided by Art. 320, Vernon's Ann.Civ.Stat., to require him to show his right to maintain the suit. For the purpose of the hearing on the motion, it was agreed that the Attorney General has not been requested by the Board of Insurance Commissioners to bring said suit. But on the contrary, that on March 11, 1940, said Board held a hearing for the purpose of determining whether said Board would give its consent and authority to the Attorney General for the prosecution of the suit, and that after said hearing, the Board of Insurance Commissioners by unanimous action of its membership voted not to join the Attorney General in the prosecution of the suit.

The trial court sustained the motion of the defendants and dismissed the plaintiff's suit.

### Opinion.

We do not pass upon appellant's first contention to the effect that the charter in question was void and may therefore be collaterally attacked, or more exactly, ignored as being of no force and effect. We will proceed at once to a consideration of the broader and more vital question of whether or not the Attorney General has the legal right to institute and maintain the suit in the name of the State to forfeit the charter for cause, without the consent of the Board of Insurance Commissioners.

The Constitution of the State of Texas, Art. IV, Sec. 22, Vernon's Ann.St., prescribing the duties of the Attorney General provides among other things: "The Attorney General shall hold office for two years and until his successor is duly qualified. He shall represent the State in all suits and pleas in the Supreme Court of the State in which the State may be a party, and shall especially inquire into the charter rights of all private corporations, and from time to time, in the name of the State, take such action in the courts as may be proper and necessary to prevent any private corporation from exercising any power or demanding or collecting any species of taxes, tolls, freight or wharfage not authorized by law. *He shall, whenever sufficient cause exists, seek a judicial forfeiture of such charters, unless otherwise expressly directed by law,* and give legal advice in writing to the Governor and other executive officers, when requested by them, and perform such other duties as may be required by law. He shall reside at the seat of government during his continuance in office. He shall receive for his services an annual salary of Ten Thousand ($10,000.00) Dollars, and no more." (Italics ours)

It will be noted that the Constitution makes it the duty of the Attorney General to seek judicial forfeiture of corporate charters "whenever sufficient cause exists."

The general authority so conferred is limited only by the added proviso "unless otherwise expressly directed by law."

Counsel for the defendants contend that, in so far as insurance companies are concerned, the power of the Attorney General to institute and maintain suits for the forfeiture of charters has been limited by the statutes pertaining to insurance. In that connection it is pointed out that the business of insurance has been the object of more legislation than any other subject. And that complete regulatory power and control of insurance companies and the business of insurance in general has been vested in the Board of Insurance Commissioners. See Title 78, art. 4679a et seq., Vernon's Ann.Civ.Stat. With commendable diligence counsel have brought forward in their brief every provision of the statute which they conceive to support their contention. A consideration of these statutory provisions serves to show that large powers of regulation and control of the business of insurance have been vested in the Board of Insurance Commissioners. But in our opinion they nowhere reveal an intent on the part of the Legislature to limit the specific powers conferred upon the Attorney General to seek judicial forfeiture of corporate charters. There is certainly no provision which "expressly" prescribes any such limitation.

In general the constitution makes it the duty of the Attorney General to seek forfeiture of charters "whenever sufficient cause exists." To our minds this means that the Attorney General, whose duty it is to institute such suits, has the power to determine the existence of "sufficient cause." We find nothing in the statutes pertaining to insurance which in our opinion "expressly" or by necessary implication evidences a legislative intent to delegate to the Board of Insurance Commissioners the ascertainment of the "sufficient cause" upon which the Attorney General is required to act in instituting such suits.

The Board of Insurance Commissioners is an administrative body and the powers of regulation and control of insurance matters are administrative in character. The institution and prosecution of suits for forfeiture of corporate charters on the other hand is of a legal nature. In their brief, counsel for defendants in effect concede that the actual institution and prosecution of suits for the forfeiture of corporate charters devolve upon the Attorney General. But they contend that in so far as insurance companies are concerned he cannot perform the duty unless and until the Board of Insurance Commissioners shall find, or at least join him in finding, that good cause exists therefor. No such intent to limit the constitutional powers of the Attorney General should be read into the statute by mere implication. Especially is this true in view of the constitutional provision which lodges full power in the Attorney General in that regard, unless and until the legislature expressly provides otherwise.

The judgment of the trial court is reversed and the cause remanded for further proceedings.

Reversed and remanded.